[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 12, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-16064
Non-Argument Calendar

_____

D. C. Docket No. 04-00028-CR-T-30-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES LOONEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 12, 2005)**

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Charles Looney ("Looney") appeals his conviction and 12-month sentence

for failure to file an income tax return for the year 1997, in violation of 26 U.S.C. § 7203. After review, we affirm in part, and reverse and remand in part.

## I. BACKGROUND

Looney was charged with two counts of filing a false tax return, in violation of 26 U.S.C. § 7206(1) (Counts 1 and 2), and one count of willful failure to file a tax return, in violation of 26 U.S.C. § 7203 (Count 3).

### A.      Looney's Business Income and Tax History

During Looney's trial, the testimony regarding Looney's business income was as follows. In October 1993, Looney began operating an independent distributorship in a legitimate multi-level marketing company called Starlight International ("Starlight"). Starlight distributes vitamins and nutrition products. As an independent distributor, Looney was responsible for reporting his income to the Internal Revenue Service ("IRS") and for paying his own taxes.

In October 1994, Looney transferred his distributorship to a business, CL Marketing. CL Marketing was an unincorporated business trust organization ("UBTO"). Looney created the UBTO after attending tax seminars and talking with "some tax professionals, attorneys, [accountants], and some friends," including David Simmons ("Simmons"). Looney testified that Joe Sweet ("Sweet"), a minister at his church and a tax professional, told him that the United

2

States Supreme Court had ruled that UBTOs were non-taxable entities. According to Looney, he sent letters to several attorneys and certified public accountants ("CPAs"), asking them whether he was required to file an individual tax return. Based on their responses, Looney believed that: (1) filing a tax return was "strictly voluntary"; (2) compensation for his own labor could not be taxed; and (3) as long as he had no profit, he did not owe any taxes. Looney also testified that he relied on: (1) an essay written by Sweet concerning common law UBTOs; and (2) an article by an attorney, which, as he understood it, stated that a UBTO is a non-taxable entity.

Looney failed to file individual tax returns for 1995 and 1996.

On February 13, 1998, IRS Officer Kathy Kendall ("Officer Kendall") met with Looney to discuss problems with Looney's 1993 tax return and Looney's failure to file 1995 and 1996 tax returns. At the meeting, Officer Kendall explained that IRS documents showed that Looney had earned taxable income for the years 1995 and 1996.

In April 1998, Looney filed Form 1040 tax returns for the years 1995 and 1996. Although Looney had received approximately $306,894 in gross income in 1995, he reported only $53,480 on his 1995 tax return. Similarly, although Looney had received approximately $328,501 in gross income in 1996, he reported only

3

$69,221 on his 1996 tax return. On April 22, 1998, Officer Kendall referred Looney's case to the criminal investigation division of the IRS.

In 2003, Looney received notification that he was under investigation again. Looney then consulted Paul Chappell ("Chappell"), a tax attorney. Thereafter, Looney decided to file amended returns for the years 1995 and 1996, an original return for 1997, and to seek a status determination from the IRS regarding other years. Looney stated that in 2003, Richard Fuselier ("Fuselier") prepared these returns for him.

**B.    Looney's Evidentiary Proffers**

During the trial, Looney named several witnesses that he wished to call. First, Looney indicated that he wished to call Chappell as a witness to explain the advice that he gave to Looney. The government responded that Chappell's testimony regarding what Chappell told Looney in 2003 was irrelevant to what Looney knew in 1995, 1996, 1997, and 1998. The district court determined that Looney could not call Chappell because Chappell's testimony was hearsay, irrelevant to Looney's reliance defense, and unnecessary since Looney already had testified about Chappell's advice.

Looney and the government then stipulated that Chappell's testimony would have been that he told Looney: (1) to file amended tax returns for 1995 and 1996;

4

(2) to file a tax return for 1997; (3) to include in those returns the income in the UBTO, which previously was unreported income received from Starlight; and (4) to wait to file tax returns for 1998 through 2002 until Looney received a status determination letter from the IRS. The parties also stipulated that Chappell told Looney that his previously held belief that the trust was not taxable "would not hold up in court." The stipulations were published to the jury.

Looney also indicated that he intended to call Fuselier, who, in 2003, prepared Looney's amended 1995 and 1996 and original 1997 tax returns. Looney indicated that Fuselier would explain the figures. The district court stated that it would exclude Fuselier's testimony because it was irrelevant to Looney's state of mind in 1995 and 1996.

Finally, Looney stated that he intended to call his friend, Simmons, to testify about Looney's meetings with the IRS and what Simmons told Looney about UBTOs. The district court stated that it was concerned that Simmons's testimony would confuse the jury, determining that it only would allow Simmons to testify: (1) about conversations that he was present for; and (2) that he advised Looney about UBTOs and sold the trust to Looney.

## C.    Looney's Waiver of <u>Blakely</u>[1] Rights

---

[1]<u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531 (2004).

Before the jury instructions were finalized, Looney requested that the district court require the jury to make a finding of the amount of his tax liability for purposes of applying the Sentencing Guidelines. Subsequently, however, Looney requested that the district court make a finding of the amount of his tax liability beyond a reasonable doubt. After an off-the-record discussion, the following colloquy took place:

COURT: What did you decide Mr. Hansen [Looney's attorney]?

HANSEN: I hate to admit this, Your Honor, but we'll go with the Government's position on this.

COURT: Okay. So that means we're going to take the specific question off the verdict form asking for the amount of the tax –

HANSEN: Yes.

COURT: – liability. And the defendant stipulates to the Court making that determination at what standard, preponderance of the evidence or beyond a reasonable doubt?

HANSEN: Well, I can't imagine why I wouldn't want it to be beyond a reasonable doubt.

COURT: I can't either.

After a brief recess, Hansen indicated that Looney agreed to having the district court determine beyond a reasonable doubt the amount of his tax liability, as follows:

6

HANSEN: Your Honor, we did consult with Mr. Looney and he agrees with the decision not to put the additional line on to have the jury determine the tax liability, so we'll leave that to the Court.

The district court questioned Looney regarding his request, as follows:

COURT: All right. Mr. Looney, you've had a chance to talk to your lawyer about the <u>Blakely</u> decision and how it might impact your case and the sentencing on your case.

LOONEY: Yes, sir.

COURT: And you're willing to have the Court determine whatever <u>Blakely</u> issues may apply to sentencing?

LOONEY: Yes.

COURT: And you're willing for the guidelines to apply in so far as <u>Blakely</u> is concerned?

LOONEY: Yes.

COURT: And have you made that decision freely and voluntarily?

LOONEY: Yes, sir.

COURT: And the Court is to make any findings in that regard beyond a reasonable doubt. Is that right?

LOONEY: Yes, sir.

COURT: Okay. I'm going to have one of my clerks put that in writing and have Mr. Hansen, have you and Mr. Looney sign it.

HANSEN: Your statement was fine, Your Honor.

COURT: I don't know that it has to be in writing, but I'd rather do it that way.

7

HANSEN:   We don't have a problem with that.

In addition to agreeing that the district court, not the jury, would determine his tax liability beyond a reasonable doubt, Looney signed a written waiver of a jury finding his sentencing enhancements, which stated:

> I, Charles Looney, having consulted with counsel regarding the issues raised by the United States Supreme Court's opinion in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004), do hereby knowingly, voluntarily and intelligently waive the right to have the jury determine any and all potential sentencing enhancements applicable under the United States Sentencing Guidelines.  I understand that the Court will determine any applicable sentencing enhancements beyond a reasonable doubt.

The jury found Looney not guilty on Counts 1 and 2 (willfully filing a false income tax return for the years 1995 and 1996) and guilty on Count 3 (willfully failing to file a tax return for the year 1997).

## D.    PSI and Sentencing

The Presentence Investigation Report ("PSI") recommended a base offense level of 15, based on a tax liability of $141,333 for the year 1997.  <u>See</u> United States Sentencing Guidelines ("U.S.S.G.") §§ 2T1.1, 2T4.1 (1997).[2]  The PSI based the $141,333 figure on the trial testimony of an IRS agent who computed

---

[2]U.S.S.G. § 2T1.1 provides that the base offense level for willful failure to file a return is the "[l]evel from § 2T4.1 (Tax Table) corresponding to the tax loss."  U.S.S.G. § 2T1.1(a)(1). The Tax Table provides for an offense level of 15 if the tax loss is greater than $120,000. U.S.S.G. § 2T4.1(J).

8

Looney's 1997 taxable income based upon the commissions reported in 1997 less the legitimate business expenses reported on the 1997 tax return.

With a total offense level of 15 and a criminal history category of I, Looney's Guidelines range was 18-24 months' imprisonment. However, because the statutory maximum sentence was 12 months' imprisonment, Looney's Guidelines imprisonment range was reduced to 12 months. See 26 U.S.C. § 7203.

As to fines and restitution, the PSI noted that the statutory maximum fine was $100,000. See 18 U.S.C. § 3571. The Guidelines fine range, however, was $4,000 to $40,000. See U.S.S.G. § 5E1.2. The PSI also noted that Looney owed $141,333 in restitution to the IRS. See 18 U.S.C. § 3663. The restitution amount equaled the amount of Looney's tax liability.

Looney objected to the PSI, arguing that because no tax liability had been charged in the indictment or found by the jury, the district court's determination of the amount of Looney's tax liability would violate United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005). Looney also contended that no fine or restitution was justified.

At sentencing, Looney argued that the district court's determination of his tax liability was improper because it was not charged in the indictment. Looney contended that his Blakely waiver did not apply to the district court's finding

because Looney did not know when he waived his rights that the tax liability would be "part of the proof" since it was not charged in the indictment. The following exchange then took place between Hansen, Looney's counsel, and the district court:

HANSEN: We think that under <u>Apprendi [ v. New Jersey</u>, 530 U.S. 466, 120 S. Ct. 2348 (2000),] it's improper for this to be added right now and also because of the fact that it's really sentence enhancement. . .

COURT: Well, you waived the <u>Blakely</u> rights in writing; correct – signed by you and your client.

. . . .

HANSEN: . . . We did, and I don't deny that, but let me comment about that. <u>Blakely</u> had come out, I think, right before the trial. At the time that we were asked to waive, I wasn't aware of <u>Blakely</u> yet . . . . What we were told was that it was either a choice between waiving our right to have the jury decide this or not waiving it; [and] in the heat of the trial actually we decided to go ahead and waive it, but . . . .

COURT: And that was the whole purpose of your waiving it; right? So, we did not put it to the jury. It was not argued to the jury, and the jury didn't make that decision because you didn't want them to make the decision, and that's why you signed the <u>Blakely</u> waiver; right?

HANSEN: At the time, your honor, I didn't realize that we were waiving a flaw in the indictment . . . .

The district court denied Looney's <u>Blakely</u> objection, stating: "You waived

10

it – specifically waived it for that purpose, and you can't go back over and do it now." After the government presented evidence as to the tax liability amount, the court found, beyond a reasonable doubt, that the amount of tax liability for 1997 was $141,333. The district court then adopted the PSI's Guidelines calculations, including "restitution as determined by the [IRS]."

As to Looney's fine, the government requested that the district court fine Looney $100,000, and the district court responded that under U.S.S.G. § 5E1.2, "the guidelines call for a maximum fine of $40,000." The government explained that under 18 U.S.C. § 3571, $100,000 was the statutory maximum, while the Guidelines fine was $4,000 to $40,000. The government clarified that it was requesting the district court to exercise its discretion.

The district court then noted that U.S.S.G. § 5E1.2, cmt. n. 4, provides for an upward departure from the Guidelines fine range where two times the amount of loss caused by the offense exceeds that maximum Guidelines range, and stated: "So two times the amount of loss [$141,333] would be $282,000, I guess, limited by the statutory maximum of [$100,000]."

The district court then sentenced Looney to 12 months' imprisonment and imposed a fine of $75,000, which represented an upward departure from the Guidelines fine range of $4,000 to $40,000 under U.S.S.G. § 5E1.2. Although the

11

district court did not order restitution, it orally imposed, as a condition of Looney's supervised release, a requirement that Looney "shall cooperate with the [IRS] regarding all outstanding taxes, interest, and penalties relating to the offense of conviction." The written judgment, however, stated that Looney owed restitution in an amount that would be determined by the IRS.

Before briefing was completed in the instant appeal, Looney filed a motion with this Court for "release from fine pending appeal." Looney's motion argued that because the imposition of a $75,000 fine was likely to be reversed on appeal, this Court should stay payment of the fine pending the appeal's final outcome. This Court granted Looney's motion to stay payment and remanded the case to the district court for the limited purpose of "determining what conditions, if any, should be imposed." In our remand order, this Court noted that the statutory maximum fine for an individual who violates 26 U.S.C. § 7203 is $25,000, and not $75,000, as was imposed. On remand, the district court held a hearing and ordered Looney to post a bond to secure the full $75,000.

## II. DISCUSSION

### A. Evidentiary Issues as to Conviction

On appeal, Looney argues that he was denied his Sixth Amendment right to present "all witnesses" that were central to his defense, which was good faith

12

reliance.  Looney contends that the district court should have allowed Chappell to testify, pointing out that Chappell would have: (1) testified about the manner in which he advised Looney; (2) explained why he advised Looney to seek a status determination from the IRS; (3) spoken about Looney's good faith, but misguided, belief that the UBTO was legal; and (4) testified that the IRS's internal documents showed that Looney owed no taxes for 1997.  Looney further argues that the district court should have allowed Simmons to testify about the advice that he gave Looney regarding the UBTO.[3]

A violation of 26 U.S.C. § 7203 must be willful. See 26 U.S.C. § 7203.  The statutory willfulness requirement in § 7203 can be negated by a subjective, "good-faith misunderstanding of the law or a good-faith belief that one is not violating the law." Cheek v. United States, 498 U.S. 192, 199-202, 111 S. Ct. 604, 609-11 (1991) (analyzing the term willfully as used in 26 U.S.C. § 7203).  "Such a question of whether a defendant believed in good faith that he was not violating the tax law is for the jury." United States v. Lankford, 955 F.2d 1545, 1550 (11th Cir. 1992).  "[W]here the element of willfulness is critical to the defense, the defendant

---

[3]We review the district court's rulings on admissibility of evidence for an abuse of discretion. United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000).  "A district court's evidentiary rulings will only be reversed if the resulting error affected the defendant's substantial rights." United States v. Delgado, 321 F.3d 1338, 1347 (11th Cir. 2003) (quotation marks and citations omitted).

is entitled to wide latitude in the introduction of evidence tending to show lack of intent." Id. (internal quotation marks and citations omitted).  However, where the substance of the defendant's good faith defense was presented to the jury, notwithstanding the missing evidence, any error in not admitting the evidence did not warrant a reversal.  See United States v. Wellendorf, 574 F.2d 1289, 1290 (5th Cir. 1978).[4]

Evidence concerning the reasonableness of Looney's belief that he was not violating the tax laws when he failed to file a return in 1997 would have been relevant to whether his violation was willful under 26 U.S.C. § 7203.  See Fed. R. Evid. 401; Cheek, 498 U.S. at 199-202, 111 S. Ct. at 609-11.  However, the district court did not err in refusing to allow Chappell to testify.  Chappell advised Looney in 2003, subsequent to the commission of the instant offense (failure to file a tax return for 1997).  Therefore, Chappell's testimony would have been irrelevant to Looney's state of mind at the time of the offense.  Additionally, Looney and the government stipulated as to the contents of Chappell's testimony, and those stipulations were published to the jury.

We also reject Looney's contentions about Simmons's testimony.  First, the

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals prior to October 1, 1981.

14

district court did not prevent Simmons from testifying. In fact, Simmons testified about the conversations that he witnessed between Looney and Officer Kendall. Further, the district court did not prevent Simmons from testifying that he had advised Looney about the UBTO and that he sold Looney the trust. The district court simply ruled that Simmons could not testify regarding the substance of his theory that the trusts were a lawful way to avoid payment of taxes. The district court's concern that Simmons's testimony might confuse the jury regarding the state of the law was not an abuse of discretion.

Further, even assuming arguendo that the district court abused its discretion in limiting Simmons's testimony and not allowing Chappell to testify, Looney's substantial rights were not affected. Looney testified extensively concerning his beliefs that the payment of taxes was voluntary, that compensation for his labor was not taxable, and that the trusts were a lawful way of avoiding taxes. Looney testified at length about specific individuals he relied upon for advice, including Simmons. Also, the district court allowed Looney to read from taxation literature, which the district court admitted into evidence. We find no reversible error in Looney's trial from any of the district court's evidentiary rulings.

## B.   **Booker** Issue

Looney next argues that although he waived his right to have the jury

15

determine "any and all sentencing enhancements," he did not waive his right to have the jury find the facts used to determine his base offense level. He contends that the district court violated <u>Booker</u> when it calculated his offense level based on a finding of the amount of his tax liability ($141,333) that was neither charged in the indictment, nor proven to a jury.[5]

In <u>Booker</u>, the Supreme Court held that <u>Blakely</u> applied to the Sentencing Guidelines. <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1297-98 (11th Cir.), <u>cert. denied</u>, 125 S. Ct. 2935 (2005). "Under <u>Booker</u>, there are two kinds of sentencing errors: one is constitutional and the other is statutory." <u>United States v. Dacus</u>, 408 F.3d 686, 688 (11th Cir. 2005). "[T]he Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." <u>Rodriguez</u>, 398 F.3d at 1298 (emphasis omitted). The statutory error occurs when the district court sentences a defendant "under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment enhancement violation." <u>United States v. Shelton</u>, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

---

[5]Because Looney timely raised a <u>Blakely</u> objection in the district court, we review his <u>Blakely</u>, now <u>Booker</u>, claim <u>de novo</u>. <u>United States v. Paz</u>, 405 F.3d 946, 948 (11th Cir. 2005).

In this case, we conclude that the district court did not violate Looney's Sixth Amendment rights. Looney clearly and expressly waived his right to have a jury determine the amount of tax liability in this case. Although the district court initially granted Looney's request to submit sentencing factors to the jury, Looney later requested that the district court redact the questions concerning his tax liability from the verdict form. Looney also requested that the district court determine the amount of his tax liability beyond a reasonable doubt and at sentencing, the district court did so.[6] Thus, Looney's Sixth Amendment rights were not violated.

Although there is no Sixth Amendment violation in this case, the district court committed statutory <u>Booker</u> error in sentencing Looney under a mandatory Guidelines regime. While Looney waived the jury's finding of both the amount of his tax liability and any sentencing enhancements, Looney did not waive the right to appeal his sentence and did not relinquish his right to be sentenced under an

---

[6]Looney contends that he did not waive his right to have a jury determine his tax liability in this case because his written waiver specifically waived the right to have a jury determine "sentencing enhancements," and Looney did not receive any. He argues that the district court did not determine his tax liability in order to apply an "enhancement," but instead to determine his offense level. We need not decide whether the increase in Looney's offense level was effectively an enhancement for purposes of the written waiver because in any event, the record shows that in the colloquy with the district court, Looney expressly waived his right to have a jury determine the amount of his tax liability and expressly consented to the district court's determining the amount of his tax liability beyond a reasonable doubt.

17

advisory Guidelines regime. Thus, we must determine whether the statutory error in Looney's sentencing is harmless. See Paz, 405 F.3d at 948.

"A non-constitutional error is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the sentence, or had but very slight effect. If one can say with fair assurance that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error." United States v. Mathenia, 409 F.3d 1289, 1292 (11th Cir. 2005) (internal quotation marks, brackets, ellipses, and citations omitted). The burden is on the government to show that the error was harmless and the standard "is not easy for the government to meet." Id.

There is no evidence or any indication in the record revealing what effect, if any, changing from a mandatory to an advisory approach would have had on the district court's sentencing decision in Looney's case. "We simply do not know what the sentencing court would have done had it understood the guidelines to be advisory rather than mandatory, and had properly considered the factors in 18 U.S.C. § 3553(a)." United States v. Davis, 407 F.3d 1269, 1271 (11th Cir. 2005).

Accordingly, we vacate Looney's sentence and remand his case to the district court for resentencing. Because we are remanding the case to the district court, we note that the district court correctly calculated Looney's Guidelines

range.  See United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (stating that after Booker, district courts must consult the Guidelines and "[t]his consultation requirement, at a minimum, obliges the district court to calculate correctly the sentencing range prescribed by the Guidelines").

Thus, on remand, the district court is required to sentence Looney under an advisory Guidelines regime, and shall consider the Guidelines range of 18-24 months' imprisonment and "other statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp. 2004)."  Booker, 125 S. Ct. at 757.  Specifically, in this case, the district court must abide by the statutory maximum sentence of 12 months' imprisonment.[7]

## C.    Fine Issue

Next, Looney argues that the district court erred by imposing a $75,000 fine because 26 U.S.C. § 7203 provides for a maximum fine of $25,000.[8]  Based on the following, we conclude that the district court did not err, much less plainly err, by

---

[7]We do not mean to suggest by our holding that the district court must impose any particular sentence on remand.  Rather, we merely hold that the government did not meet its burden of showing that the Booker statutory error was harmless.  We also do not attempt to decide now whether a particular sentence might be reasonable in this case.

We also note that Looney argues that a resentencing under an advisory Guidelines regime would violate his due process rights and the ex post facto Clause because his new sentence could exceed the maximum that he received under a mandatory pre-Booker Guidelines regime.  However, this Court has already rejected Looney's due process/ex post facto argument.  See United States v. Duncan, 400 F.3d 1297, 1307-08 (11th Cir. 2005).

[8]Because Looney did not raise the statutory maximum fine issue in the district court, we review it for plain error.  See United States v. Peters, 403 F.3d 1263, 1270 (11th Cir. 2005).

19

imposing a fine of $75,000.

Under 26 U.S.C. § 7203, "[a]ny person" who violates the statute is "guilty of a misdemeanor" and "shall be fined not more than $25,000." 26 U.S.C. § 7203. However, in 1984, Congress added to the criminal code a general fine statute applicable to all offenses. See 18 U.S.C. § 3571. Under § 3571, an individual who has been found guilty of a Class A misdemeanor may be fined "not more than the greatest of" the amount specified in the law setting forth the offense, $100,000, or twice the gross gain or loss. See 18 U.S.C. §§ 3571(b), (d).[9] In addition, § 3571(e) provides that a defendant may be fined more than the amount listed in the statute setting forth the offense of conviction, unless the offense of conviction exempts a larger fine. Specifically, § 3571(e) states:

> Special rule for lower fine specified in substantive provision. – If a law setting forth an offense specifies no fine or a fine that is lower than the fine otherwise applicable under this section and such law, by specific reference, exempts the offense from the applicability of the fine otherwise applicable under this section, the defendant may not be fined more than the amount specified in the law setting forth the offense.

18 U.S.C. § 3571(e) (emphasis added). Thus, a lower fine limit in the statute setting forth the offense of conviction does not preclude the district court from imposing a higher fine under the general fine statute unless the statute setting forth

_____

[9]A violation of 26 U.S.C. § 7203 is a Class A misdemeanor, as it is punishable by not more than one year of imprisonment. See 18 U.S.C. § 3559(a)(6); 26 U.S.C. § 7203.

20

the offense of conviction specifically says so.

The statute under which Looney was convicted, 26 U.S.C. § 7203, does not contain any language exempting it from 18 U.S.C. § 3571, the general fine statute. Thus, the statutory maximum fine applicable to Looney's offense is either twice the tax liability from Looney's offense ($141,333) or $100,000.[10]

We also note that the Guidelines fine range for Looney's offense is $4,000 to $40,000. See U.S.S.G. § 5E1.2. However, in cases such as Looney's, the Guidelines provide district courts wide discretion to depart upwardly as to fines. See U.S.S.G. § 5E1.2 cmt. n. 4.[11] In this case, the district court chose to do so, stating that it was imposing "a fine in the amount of $75,000. That's an upward departure made on the basis of 5E1.2, Note 4." Thus, the district court did not err, much less plainly err, in imposing a fine of $75,000, and we affirm Looney's fine.

## D. Restitution Issue

---

[10]We reject Looney's argument that our remand order staying the payment of the fine specifically directed that the maximum fine amount is $25,000. In our order granting Looney's motion to stay the payment of the fine, this Court noted that the maximum fine under § 7203 is $25,000. The statement did not constitute a merits determination on the issue of the amount of the fine.

[11]The commentary to U.S.S.G. § 5E1.2 states:
The Commission envisions that for most defendants, the maximum of the guideline fine range from subsection (c) will be at least twice the amount of gain or loss resulting from the offense. Where, however, two times either the amount of gain to the defendant or the amount of loss caused by the offense exceeds the maximum of the fine guideline, an upward departure from the fine guideline may be warranted.
U.S.S.G. § 5E1.2 cmt. n. 4.

Finally, Looney argues that the district court erred by imposing restitution without ordering a specific amount. Looney argues that it was improper for the district court to direct that the amount of restitution be determined by the IRS. We agree. On remand, if the district court elects again to order Looney to pay restitution, it must specify the amount due. See 18 U.S.C. § 3664(f)(1)(A); U.S.S.G. § 5E1.1; United States v. Butler, 297 F.3d 505, 518-19 (6th Cir. 2002) (district court may not delegate the determination of restitution to the IRS).

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**